By the Court—Monell, J.
The defense was two- . fold: First, that the sale was to Samuel Lowenstein, and not to the defendant; and second, that the plaintiffs’ assignee had transferred the demand to Joseph Lowenstein, to whom Samuel had paid it. Upon both these issues the Jury have found against the defendant. Eo question, therefore, arises on the facts.
The first exception taken by the defendant was to allowing the following question to be put to the witness Bishop:
“ State whether you knew when Lowenstein came there, anything concerning his responsibility, and if so, whether you made any communication on that subject to the-plaintiffs ?” The only objection to this question Avas, “ that the defendant was not shown to be present.” The case shoAvs that Samuel Lowenstein applied to the plaintiffs to purchase goods. The plaintiffs, deeming him irresponsible, declined to sell, unless he would give security. Subsequently, on the same day, he brought the defendant to the plaintiffs’ store, and offered him as security. The plaintiffs objecting that a verbal agreement to guarantee would be void, the defendant directed the goods to be sent to Lowenstein and charged to him, the defendant. The goods were so sent and charged. The Jury, by their verdict, have so found from the evidence.
Bishop was a witness for the plaintiffs, and had testified that Lowenstein came to the plaintiffs’ store to purchase *353 goods, and offered to give security; that on the same day he came again with the defendant, whom he offered as security. The question related to the communication of Bishop’s knowledge of Lowenstein’s irresponsibility, to the plaintiffs, and must have had reference, in point of time, to the occasion of Lowenstein’s first call at the plaintiffs’ store. It was at that time that .he inquired if the plaintiffs would sell to him, if he would give security. It is not pretended that the defendant was then present. He had not then been brought into the transaction, and could not be affected or influenced by any conversation between the witness and his employees. It was a confidential communication to the plaintiffs, from which they were to decide whether to give or decline the credit asked by Lowenstein, and the presence or otherwise of the defendant would be no reason for excluding the evidence. If the communication was proper to be made to the plaintiffs, it was proper it should be made privately, nor was it necessary to show that it was made in the presence of either Lowenstein or the defendant. Indeed, we feel authorized to infer that it was not made in the presence of either. That it was confidential, and was privately made, is to be presumed from its nature, which related to the credit of Lowenstein. It is enough that the defendant was not present, or, if present, had incurred no liability, and that it does not appear that he was influenced, or could have been influenced, in the subsequent part he took in the transactions, by anything that passed between the witness and the plaintiffs. This disposes of the objection on the only ground taken by the defendant. Upon a bill of exceptions we cannot look into grounds not taken at the trial. (Whiteside v. Jackson, 1 Wend., 418; Newton v. Harris, 2 Seld., 345.)
But I think the question put to the witness was proper, for another reason. The question before the Jury was, whether the sale was to the defendant or to Lowenstein. The defendant had given evidence which, unexplained, tended to show that the sale was to Lowenstein, and that *354 the plaintiffs were willing to trust him, believing him to be responsible. It was entirely competent, it seems to us, for the plaintiffs to contradict this evidence and to show that they did not believe Lowenstein was responsible. The communication of Bishop was at least some evidence bearing on that question, and tended to show that the plaintiffs were not willing to trust Lowenstein. The defendant had himself opened the way for this inquiry, and could not close it to the plaintiffs. We, therefore, see no objection to the .question.
It was objected by the defendant, that the question put to the witness, Samuel Lowenstein,- “ by whom was the note you saw in Eochester indorsed,?” was improperly excluded. The defendant had given in evidence a bill of sale from M. Bronner, plaintiffs’ assignee, to Joseph Lowenstein, of accounts against Samuel Lowenstein, under dates from September to November, 1856, inclusive, amounting to $759.26, 'and acknowledging payment by four notes for $189.82 each, at 2, 4, 6 and 8 months. This bill of sale was signed by Seckel Bronner, in "the name-of M. Bronner, assignee, but without the consent, knowledge or "authority of the assignee. The defendant did not show that these notes, or either of them, were ever delivered to the assignee; on the contrary, it was expressly proved that the assignee repudiated the sale, and refused to receive the notes. Meyer, one of the defendant’s witnesses, testified, that he negotiated the purchase of the accounts with Mr. Fulda, who was the payee and indorser of the notes; that after the assignee refused to receive the notes, he returned them to Fulda, from whom he had received them. The first of the four notes was the one to which the inquiry related. Fulda testified that he did not know where it was. He says, “I expect it is-destroyed; after I got it back, I tore my name off; I don’t know where it is now; I have not got it.” Samuel Lowenstein swears that he saw the note in Husband •& Shirtliiff’s banking house in Eochester; but whether before or after Fulda “ expected” it was destroyed -does not *355 appear. The objection to the question was, that the loss of the note had not been sufficiently proven to let in secondary evidence. I think the evidence failed to prove that the note was destroyed or lost. It was shown to have been last, either in Fulda’s possession or in Husband & Shirtliff’s banking house. Fulda expected it was destroyed. He tore off his name, but did not know where it was. It may have been, and for ought that appears, was, afterwards, in the banking house in Rochester, and I think the. defendant was bound to have shown that search had been made for it in the latter place, and that it could not be found. The loss was a question for the Court and not for the Jury, and I think, on the evidence, the decision sustaining the objection was correct. It is difficult to see the materiality of the evidence sought by the question. The testimony was very strong, if not overwhelming, that the note was not in the plaintiffs’ possession, nor in possession of their assignee. Any evidence, therefore, in regard to it, does not seem to have been pertinent to the issue the Jury were trying. Such objection, however, was not taken.
The objection to the reading of the deposition of the witness Fulda, on the ground that his absence at the time of the trial was not sufficiently proved, is removed by the case of Donnell v. Walsh, (6 Bosw., 621), and was substantially abandoned on the argument.
The only remaining objections urged on the argument, to which exceptions were taken, were to the admission of judgment rolls, of judgments recovered against Samuel Lowenstein, about the time of the sale of the goods, upon indebtedness incurred by him anterior thereto. The objections were, first, that if they were offered to contradict Lowenstein, his attention had not been sufficiently called to them; and second, that they were on a collateral issue. Samuel Lowenstein, the judgment debtor, was under a cross-examination by the plaintiffs’ counsel. He had testified on his direct examination, that he had purchased the goods in question; that they were sold to him, and not to *356 the defendant, and that he was urged by the plaintiffs to buy the g'oods on six months credit. On being asked if anything was said by Bronner or the defendant, to the effect that any goods sold to him should be charged to the defendant, he said no; that he would not have bought goods under that condition, he had credit enough for all he wanted. On his cross-examination, he was interrogated in regard to his responsibility at the time of sale, and was asked without objection, in regard to the several judgments. The judgment rolls were shown to the witness, who answered variously to them, that they were not for his debts, or nob against him, or had been arranged, giving explanations in respect to all or most of them. All the rolls were identified by the witness, and he was subjected to a lengthy examination in reference to the judgments, and the debts upon which they were recovered. The object of this examination, doubtless, was to affect and discredit the testimony of Lowenstein, that he was urged to buy on six months credit, or that he had credit enough for all he wanted, by showing that at the time of the sale he was largely in debt and irresponsible. It was legitimate, it seems to me, for such purpose. At the close of his examination, which had been taken without objection, the judgment rolls which had previously been shown the witness and identified by him, also without objection, were offered in evidence. They were clearly proper. If for no other reason, the previous examination had made them so. After having been testified to by the witness, they became the best evidence, and were entitled to go to the Jury as evidence, both contradicting the witness and as tending to disprove the allegations of a sale to Lowenstein. The first bianeh of the objection that the witness’ attention had not been sufficiently called to them, has no foundation in fact, and the second, that they were upon a collateral issue, is equally untenable. They' bore with force upon the principal questions the Jury were to decide.
The judgment should be affirmed with costs.
*357 Barbour, J.
I cannot concur in the opinion affirming the judgment in this case.
It appears to me that the admission of the testimony of Bishop, touching the communication made by him to the plaintiffs, in the absence of the defendant, respecting the pecuniary standing of Lowenstein, was improper. The only real question in regard to that matter was, whether the plaintiffs refused to sell goods to him upon a credit; and, it may be added, that even this was merely collateral to the main issue in the case; that is, whether the goods were, or were not, sold by the plaintiffs to the defendant. The object of the question, and the effect of the answer upon the Jury, were, probably, to convince them that such communication must so have operated upon the minds of the plaintiffs that it could not, reasonably, be supposed they afterwards sold the goods to him upon credit. The workings of the plaintiffs’ minds upon the subject, or, in other words, their reasons for refusing to sell to Lowenstein, could not, properly, have been given in evidence, even by the plaintiffs themselves; which would, certainly, have been the best evidence; and, a fortiori, they cannot, legally, be established by extrinsic circumstances, thoftgh leading to that result, as an almost inevitable conclusion, through a course of reasoning.
If the probable effect of the testimony upon the conclusions of the Jury was such as is above intimated, and I cannot see how it could have been otherwise, its admission was important, inasmuch as the evidence, upon that subject, given by the plaintiffs and the defendant, respectively, was conflicting, and, to some extent, therefore, balanced, and this, it may safely be assumed, turned the scale. At least, it may have done so, and that is sufficient.
I think the judgment ought to be reversed, and a new trial granted.
Judgment affirmed.